UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED

MAY 1 – 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> *Plaintiff,* ) <br> ) <br> v. ) <br> ) <br> REGAL CINEMAS, INC., ) <br> ) <br> and ) <br> ) <br> CONSOLIDATED THEATRES HOLDINGS, GP, ) <br> ) <br> *Defendants.* ) <br> ) | Civil Action No: **08 0746** <br><br> Judge: <br><br> Filed: |

## HOLD SEPARATE STIPULATION AND ORDER

It is hereby stipulated and agreed by and between the undersigned parties, subject to approval and entry by the Court, that:

### I. Definitions

As used in this Hold Separate Stipulation and Order:

A. "Acquirer" or "Acquirers" means the entity or entities to whom Regal or Consolidated divest the Theatre Assets.

B. "Regal" means defendant Regal Cinemas, Inc., a Tennessee corporation with its headquarters in Knoxville, Tennessee, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents, and employees.

     C.    "Consolidated" means defendant Consolidated Theatres Holdings, GP, a North Carolina Partnership, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents, and employees.

     D.    "Theatre Assets" means the first-run, commercial motion picture theatre businesses operated by Regal or Consolidated, under the following names and at the following locations:

|      | Theatre Name    | Theatre Address                              |
|------|-----------------|----------------------------------------------|
| i.   | Crown Point 12  | 9630 Monroe Road, Charlotte, NC 28270        |
| ii.  | Raleigh Grand 16| 4840 Grove Barton Road, Raleigh, NC 27613    |
| iii. | Town Square 10  | 2600 Timber Dr Garner, NC 27529              |
| iv.  | Hollywood 14    | 1640 Hendersonville Rd, Asheville, NC 28803  |

and includes:

    1. All tangible assets that comprise the first-run, commercial motion picture theatre business including all equipment, fixed assets and fixtures, personal property, inventory, office furniture, materials, supplies, and other tangible property and all assets used in connection with the Theatre Assets; all licenses, permits and authorizations issued by any governmental organization relating to the Theatre Assets; all contracts, teaming arrangements, agreements, leases, commitments, certifications, and understandings, relating to the Theatre Assets, including supply agreements; all customer lists, contracts, accounts, and credit records; all repair and performance records and all other records relating to the Theatre Assets;

2. All intangible assets used in the development, production, servicing and sale of Theatre Assets, including, but not limited to all patents, licenses and sublicenses, intellectual property, technical information, computer software (except Defendants' proprietary software) and related documentation, know-how, trade secrets, drawings, blueprints, designs, design protocols, specifications for materials, specifications for parts and devices, safety procedures for the handling of materials and substances, quality assurance and control procedures, design tools and simulation capability, all manuals and technical information Defendants provide to their own employees, customers, suppliers, agents or licensees, and all research data concerning historic and current research and development efforts relating to the Theatre Assets. Provided, however, that this term does not include any right to use or interests in defendants' trademarks, trade names, service marks or service names, or copyrighted advertising materials.

## II. Objectives

The Final Judgment filed in this case is meant to ensure Defendants' prompt divestiture of the Theatre Assets for the purpose of establishing one or more viable competitors in the exhibition of first-run, commercial motion pictures in order to remedy the effects that the United States alleges would otherwise result from Regal's acquisition of Consolidated. This Hold Separate Stipulation and Order ensures, prior to such divestitures, that the Theatre Assets remain economically viable, and ongoing business concerns, and that competition is maintained and not diminished during the pendency of the ordered divestitures.

### III. Jurisdiction

The Court has jurisdiction over the subject matter of this action and over each of the parties hereto, and venue of this action is proper in the United States District Court for the District of Columbia.

### IV. Compliance with and Entry of Final Judgment

A.   The parties stipulate that a Final Judgment in the form attached hereto as Exhibit A, may be filed with and entered by the Court, upon the motion of any party or upon the Court's own motion, at any time after compliance with the requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, and without further notice to any party or other proceedings, provided that the United States has not withdrawn its consent, which it may do at any time before the entry of the proposed Final Judgment by serving notice thereof on Defendants and by filing that notice with the Court.

B.   Defendants shall abide by and comply with the provisions of the proposed Final Judgment, pending the Judgment's entry by the Court, or until expiration of time for all appeals of any Court ruling declining entry of the proposed Final Judgment, and shall, from the date of the signing of this Stipulation by the parties, comply with all the terms and provisions of the proposed Final Judgment as though the same were in full force and effect as an order of the Court.

C.   Defendants shall not consummate the transaction sought to be enjoined by the Complaint herein before the Court has signed this Hold Separate Stipulation and Order.

D.   This Stipulation shall apply with equal force and effect to any amended proposed Final Judgment agreed upon in writing by the parties and submitted to the Court.

E.   In the event that (1) the United States has withdrawn its consent, as provided in Section IV(A) above, or (2) the proposed Final Judgment is not entered pursuant to this Stipulation, the time has expired for all appeals of any Court ruling declining entry of the proposed Final Judgment, and the Court has not otherwise ordered continued compliance with the terms and provisions of the proposed Final Judgment, then the parties are released from all further obligations under this Stipulation, and the making of this Stipulation shall be without prejudice to any party in this or any other proceeding.

F.   Defendants represent that the divestitures ordered in the proposed Final Judgment can and will be made, and that Defendants will later raise no claim of mistake, hardship, or difficulty of compliance as grounds for asking the Court to modify any of the provisions contained therein.

## V.  Hold Separate Provisions

Until the divestitures required by the Final Judgment have been accomplished:

A.   Defendants shall, except as is necessary to carry out their obligations under this Hold Separate Stipulation and Order and the proposed Final Judgment, or to comply with other legal obligations, take all steps necessary to ensure that the Theatre Assets will be maintained and operated as ongoing, economically viable and active competitors in the exhibition of first-run, commercial motion pictures. Defendants shall maintain the viability, marketability, and competiveness of the Theatre Assets, and shall not cause the wasting or deterioration of the Theatre Assets, nor shall they cause the Theatre Assets to be operated in a manner inconsistent with applicable laws, nor shall they sell, transfer, encumber, or otherwise impair the viability, marketability or competitiveness of the Theatre Assets. Defendants shall conduct the business of

the Theatre Assets in the regular and ordinary course and in accordance with past practice, except as otherwise approved by the United States, and shall use their best efforts to preserve the existing relationships with suppliers, customers, employees, and others having business relations with the Theatre Assets. Defendants shall use their best efforts to keep the organization and properties of each of the Theatre Assets intact, including current business operations, physical facilities, and working conditions. Within twenty (20) days after the entry of the Hold Separate Stipulation and Order, the Defendants will inform the United States of the steps taken to comply with the Hold Separate Stipulation and Order.

B. Defendants shall use all reasonable efforts to maintain and increase the sales and revenues of the Theatre Assets, and shall maintain at 2008 or previously approved levels for 2009, whichever are higher, all promotional, advertising, sales, technical assistance, marketing, and merchandising support for the Theatre Assets. Provided, however, that Defendants are not obligated to maintain movie-specific promotions at any particular level.

C. Defendants shall provide sufficient working capital and lines and sources of credit to continue to maintain the Theatre Assets as economically viable and competitive, ongoing businesses, consistent with the requirements of Sections V(A) and (B).

D. Defendants shall take all steps necessary to ensure that the Theatre Assets are fully maintained in operable condition at no less than their current capacity and sales, and shall maintain and adhere to normal product and service improvement, upgrade, repair, and maintenance schedules for the Theatre Assets.

E. Defendants shall not, except as part of a divestiture approved by the United States in accordance with the terms of the proposed Final Judgment, remove, sell, lease, assign, transfer, pledge, or otherwise dispose of any of the Theatre Assets.

F. Defendants shall maintain, in accordance with sound accounting principles, separate, accurate and complete financial ledgers, books, and records that report on a periodic basis, such as the last business day of every month, consistent with past practices, the assets, liabilities, expenses, revenues, and income of the Theatre Assets.

G. Defendants shall take no action that would jeopardize, delay, or impede the sale of the Theatre Assets.

H. Defendants' employees with primary responsibility for the operation of the Theatre Assets shall not be transferred or reassigned to other areas within the company except for transfer bids initiated by employees pursuant to Defendants' regular, established job posting policy. Defendants shall provide the United States with ten (10) calendar days notice of such transfer.

I. Defendants shall appoint a person or persons to oversee the Theatre Assets, and who will be responsible for Defendants' compliance with this Section. This person or persons shall have complete managerial responsibility for the Theatre Assets, subject to the provisions of this Final Judgment, and shall make all pricing and discounting decisions independent of Defendants. In the event such person is unable to perform his duties Defendants shall appoint, subject to the approval of the United States, a replacement within ten (10) working days. Should Defendants fail to appoint a replacement acceptable to the United States within this time period, the United States shall appoint a replacement.

J.  Defendants shall take no action that would interfere with the ability of any trustee appointed pursuant to the Final Judgment to complete the divestitures pursuant to the Final Judgment to an Acquirer or Acquirers acceptable to the United States.

K.  This Hold Separate Stipulation and Order shall remain in effect until consummation of the divestitures required by the proposed Final Judgment or until further order of the Court.

## ORDER

It is SO ORDERED this 30th day of April 2008.

_____
United States District Judge